IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PHYLLIS ELLIS, as Administrator of the Estate of TERRANCE JENKINS, | ) ) ) | |
| | ) | Case No. 16 CV 9449 |
| Plaintiff, | ) ) | |
| v. | ) | Honorable Judge Amy J. St. Eve |
| | ) | |
| RANDY PFISTER, et al., | ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)
AND MOTION TO TRANSFER VENUE PURSUANT TO FED. R. CIV. P. 12(b)(3) OR
IN THE ALTERNATIVE, 28 U.S.C. § 1404**

Defendants, Adam Deal, Jon Deal, Christopher Bufford, Andrew Bufford,[1] James Boland,

Marvin Reed, and Randy Pfister, by and through their attorney, Lisa Madigan, Illinois Attorney

General, for their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and to Transfer Venue

pursuant to 28 U.S.C. § 1404, and state as follows:

## I.  INTRODUCTION

Plaintiff brings this lawsuit against Defendants pursuant to 42 U.S.C. § 1983 arising from

the death of Terrance Jenkins while he was incarcerated at Pontiac Correctional Center.  Plaintiff

asserts a myriad of claims against countless individuals.  With limited exception, these allegations

are scant, conclusory and implausibly conclusive.  The claims can be divided into two categories,

those asserted against high-ranking officials (against whom there are no plausible allegations of

---

[1] The Complaint does not include the first name of Defendants "Deal" or "Bufford."  However, Adam Deal, Jon Deal, Christopher Bufford, and Andrew Bufford were each served with a copy of the Complaint.  This fact alone reveals the deficient state of the Plaintiff's Complaint.  If the allegations are not specific enough to identify which person with the last name "Deal" or "Bufford" is allegedly liable -- and Plaintiff does not know and serves each – then certainly the claim is implausible as to some or all of the served Defendants.

personal conduct) and those against the members of the staff working on site the day of Mr. Jenkins's death which are overly broad and conclusory and similarly fail to state a claim.

Defendant Randy Pfister, the former Warden of Pontiac Correctional Center asserts that the Complaint fails to sufficiently state a claim for a failure to intervene (Count II) as he was not present and had no opportunity to do so, conspiracy (Count III) because there are no allegations of his intentional and conspiratorial acts, negligent or willful and wanton conduct (Count VI) because he learned of the incident after its conclusion, or negligent or willful and wanton conduct (Count VIII – wrongful death) which is inappropriate for the same reasons as Count VI. Without these specious claims against a person whom the Plaintiff cannot even allege was present and had actual knowledge of the events prior to Mr. Jenkins's death, Plaintiff filed her claim in the improper venue. Defendants also bring the instant motion to transfer venue as Plaintiff's allegations emanate from an incident that occurred at Pontiac Correctional Center and all parties, except for Defendant Pfister, work at Pontiac Correctional Center and live in the Central District of Illinois. The scant allegations of the Complaint point to the conclusion that Defendant Pfister was only named in this case to serve as a procedural vehicle to establish venue in the Northern District of Illinois.

For similar reasons, Plaintiff has also failed to state a plausible claim against Defendant Marvin Reed who was an Assistant Warden of Pontiac Correctional Center during the relevant period for claims of a failure to intervene (Count II), conspiracy (Count III), and state law claims of negligent or willful and wanton conduct (Count VI), or negligent or willful and wanton conduct (Count VIII – wrongful death). The deficiencies with regard to Plaintiff's claims against Defendant Reed are similar in nature to those against Defendant Pfister. The Complaint lacks any factual allegations supporting the claims against the former Warden and Assistant Warden at

Pontiac Correctional Center for what the Plaintiff claims was the death of Terrance Jenkins through the use of excessive force.

As to Defendants Boland, Adam Deal, Jon Deal, Christopher Bufford, and Andrew Bufford[2], Plaintiff has failed to sufficiently state a claim for excessive force (Count I), failure to intervene (Count II), conspiracy (Count III), and state law claims of intentional infliction of emotional distress (Count IV), battery (Count V), negligent or willful and wanton conduct (Count VI), battery (Count VII – wrongful death), and negligent or willful and wanton conduct (Count VIII – wrongful death).

## II.    STATEMENT OF RELEVANT FACTS

Mr. Terrance Jenkins, the decedent, was a prisoner incarcerated at Pontiac Correctional Center ("Pontiac") during all relevant times alleged in the Complaint.  (ECF No. 1 ¶ 5.)  Plaintiff, Phyllis Ellis, is Mr. Terrance Jenkins's former wife and has been appointed as administrator of Mr. Jenkins's estate.  (ECF No. 1 ¶ 5.)  Defendant Pfister is the former Warden of Pontiac (ECF No. 1 ¶ 9) and the current Warden of Stateville Correctional Center.  Defendants Reed, Boland, Deal and Bufford are correctional officers at Pontiac.  (ECF No. 1 ¶¶ 6-8, 10.)

In the Complaint, Plaintiff alleges that Defendants Boland, Deal, and Bufford used excessive force against inmate Terrance Jenkins, which resulted in his death.  (ECF No. 1 ¶¶ 25-29.)  Further, Plaintiff alleges that all Defendants, including other unknown individuals, failed to intervene in the alleged constitutional violations, and conspired to violate Terrance Jenkins's constitutional rights.  (ECF No. 1 ¶¶ 30-46.)  Plaintiff also brings state law claims of intentional infliction of emotional distress, battery, and negligent or willful and wanton conduct under 755

---

[2] *See* footnote 1.

ILCS 5/27-6, as well as battery and negligent or willful and wanton conduct (wrongful death) under 740 ILCS 180/1.  (ECF No. 1 ¶¶ 47-79.)

Specifically, Plaintiff alleges that on October 4, 2015, Mr. Jenkins was housed in protective custody at Pontiac.  (ECF No. 1 ¶ 12.)  Plaintiff also alleges that on that day, Mr. Jenkins left his housing unit to go to the outdoor recreation yard for prisoners in protective custody while Defendants Boland, Deal, and Bufford monitored the prisoners in the area immediately inside of the recreation yard.  (ECF No. 1 ¶ 15.)  Plaintiff claims that either Defendant Deal or Bufford told Mr. Jenkins that he would lose his "yard time" because Mr. Jenkins had toilet paper in his breast pocket which Defendants Deal or Bufford believed to be prohibited in the recreation yard.  (ECF No. 1 ¶ 16.)  Plaintiff claims that Mr. Jenkins insisted that he needed the toilet paper for alleged eye drainage caused by glaucoma (ECF No. 1 ¶ 16),  and a verbal altercation commenced between Mr. Jenkins and either Defendant Deal or Bufford.  (ECF No. 1 ¶ 17.)  Plaintiff alleges that either Defendant Deal or Bufford told Mr. Jenkins to position himself for handcuffing and Mr. Jenkins continued to state that he needed the toilet paper for medical reasons.  (ECF No. 1 ¶ 17.)  Plaintiff claims that at that time, Defendant Bolden sprayed Mr. Jenkins with mace and Defendants Bolden, Bufford and Deal attacked Mr. Jenkins, restraining him in handcuffs and leg irons.  (ECF No. 1 ¶ 18.)  Plaintiff alleges further that Defendants continued to attack Plaintiff after he was restrained, which resulted in Mr. Jenkins's death.  (ECF No. 1 ¶ 19.)[3]

Plaintiff claims that prior to the incident with Mr. Jenkins, Defendants Pfister and Reed reviewed reports and grievances that may have been written complaining about prior instances of excessive force by Defendants Bolden, Deal, and/or Bufford.  (ECF No. 1 ¶¶ 21-22.)  In addition, Plaintiff claims that Defendants Pfister and Reed failed to provide appropriate supervision,

---

[3] The Defendants deny Plaintiff's version of the facts.  For the purposes of this Motion only, however, they will accept them as true consistent with Fed. R. Civ. P. 12(b)(6).

discipline, and training and failed to take action to prevent other instances of alleged excessive force by Defendants Bolden, Deal and/or Bufford. Plaintiff also claims that unjustified instances of violence against prisoners are common at Pontiac. (ECF No. 1 ¶¶ 23-24.)

### III.   STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) does not test whether the plaintiff will prevail on the merits but instead whether the claimant has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but a plaintiff's complaint may not merely state an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

A plaintiff's complaint must contain allegations that "state a claim to relief that is plausible on its face." *Iqbal*, at 663, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 663. In reviewing the sufficiency of a complaint under this standard, the court must accept as true all well-pleaded factual allegations. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). However, legal conclusions and "conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *Id.*

## IV.   ARGUMENT

I.   **Plaintiff Has Failed to Sufficiently State a Section 1983 Claim Against Defendants Pfister and Reed.**

### A.  Failure to Intervene (Count II)

Plaintiff asserts in Count II that Defendants "had a reasonable opportunity to prevent the violation of Mr. Jenkins's constitutional rights..."  (ECF No. 1 ¶ 31.)  Plaintiff also alleges that prior to October 2015, Defendants "had notice that correctional staff at Pontiac were routinely using excessive force against prisoners housed there" and alleges that Defendants Pfister and Reed reviewed reports and grievances that may have been written complaining about prior instances of excessive force by Defendants Bolden, Deal, and/or Bufford.  (ECF No. 1 ¶¶ 21-22, 37.)

It is well established that bystanders are liable for failing to intervene only where they "(1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring." *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). No realistic opportunity to intervene exists when an officer is not present when an alleged constitutional violation is occurring. *See Wilbon v. Plovanich*, 67 F. Supp. 3d 927, 946-47 (N.D. Ill. 2014).  Further, no realistic opportunity to intervene exists when an officer does not know that a potential constitutional violation may occur in the foreseeable future. *Johnson v. Golliher*, No. 11-cv-1088-MJR-SCW, 2014 WL 4980018 at *3 (S.D. Ill. Oct. 6, 2014).

Plaintiff's Count II fails to adequately connect Defendants Pfister and Reed to any specific acts which allegedly violated Plaintiff's rights.  Plaintiff's Complaint is completely devoid of any allegation that either Defendant Pfister or Defendant Reed had a realistic opportunity to intervene in the alleged incident with Mr. Jenkins on October 4, 2015.  Additionally, Plaintiff has failed to state a claim for failure to intervene under Section 1983 because Count II does not plead adequate

personal involvement. Plaintiff's failure to intervene claim is based on general conclusions and provides no specific facts that show how Defendants Pfister and Reed could have prevented the alleged constitutional violations. An individual cannot be held liable under 42 U.S.C. § 1983 unless he or she is personally responsible for an alleged constitutional deprivation. *See Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981) (holding that an individual cannot be held liable under 42 U.S.C. § 1983 unless he or she is personally responsible for an alleged constitutional deprivation); *see also Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1983) (ruling that a complaint must sufficiently allege the defendant's personal involvement in order to state a constitutional claim). In essence, Plaintiff's allegations against Defendants Pfister and Reed are based on the doctrine of *respondeat superior*, which is insufficient to prove liability in a Section 1983 lawsuit. *See Askew v. Sheriff of Cook County*, 568 F.3d 632, 637 (7th Cir. 2009). Therefore, Plaintiff's failure to intervene claim against Defendants Pfister and Reed should be dismissed.

### B. Conspiracy (Count III)

In the Complaint, Plaintiff asserts that Defendants reached an agreement to deprive Mr. Jenkins of his constitutional rights, and each of the co-conspirators committed overt acts and were otherwise willful participants in joint activities. (ECF No. 1 ¶¶ 41-46.) However, Plaintiff does not allege any facts from which one could reasonably infer that Defendants Pfister and Reed entered into an agreement with any of the other Defendants for the accomplishment of some illegal end. *See Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988) (holding that a conspiracy exists if there is "(1) an express or implied agreement among defendants to deprive plaintiff of his ... constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement"). Plaintiff has failed to plead these minimal components of the conspiracy against Defendants Pfister and Reed, as there are no allegation as to when the

conspiracy was formed, nor are there any allegations as to the purpose of the conspiracy. Therefore, there is no support in the Complaint for these threadbare allegations of a conspiracy, and the claim of conspiracy in Count III should be dismissed. *See Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857, 860 (7th Cir. 1999) (bare allegations of conspiracy are insufficient to state a claim).

Without facts describing when the conspiracy was formed and the purpose of the conspiracy, the Complaint neither states a claim for conspiracy that is plausible on its face, nor gives Defendants Pfister or Reed notice of the grounds for relief. *See Loubser v. Thacker*, 440 F.3d 439, 442-43 (7th Cir. 2006) (recognizing that because conspiracies have a degree of vagueness that make bare claims of their existence "wholly uninformative to the defendant," courts require plaintiffs to "allege the parties, the general purpose, and the approximate date of the conspiracy"). Plaintiff has not done so here. As such, Plaintiff's conspiracy claim against Defendants Pfister and Reed should be dismissed.

## II. This Matter Should be Transferred to the Central District of Illinois For Resolution.

### A. To the Extent this Court grants Defendant Pfister's Motion to Dismiss, Venue in the Northern District of Illinois Would No Longer Be Proper.

The burden of showing that venue is proper is on the plaintiff. *Grantham v. Challenge–Cook Bros., Inc.,* 420 F.2d 1182, 1184 (7th Cir. 1969). For venue to lie it must be proper as to all defendants and as to all claims. *Payne v. Marketing Showcase, Inc.,* 602 F.Supp. 656, 658 (N.D. Ill. 1985).

In the case at bar, Defendant Pfister is the only Defendant who resides in the Northern District of Illinois. (*see* ECF No. 1 ¶ 4.) Plaintiff's overreaching Complaint makes allegations against Defendant Pfister based only on Defendant Pfister's former position as the Warden of Pontiac. As shown throughout this motion, Plaintiff's claims against Defendant Pfister are

woefully insufficient to state claims for failure to intervene and conspiracy as there are no facts that establish their specific and personal involvement in the alleged constitutional violations.  In the event that this Court dismisses Defendant Pfister from the instant case as requested above, venue would no longer be proper in the Northern District of Illinois as there are no other Defendants who reside in this district.  Therefore, Defendants request that the Court transfer this matter to the Central District because without the improperly asserted claims against Defendant Pfister, venue is no longer proper in the Northern District of Illinois.

> **B.  Even if Pfister is Deemed a Proper Defendant, Venue is Inconvenient and the Matter Should be Transferred to the Central District of Illinois.**

Venue is governed by 28 U.S.C. 1391(b), which provides that a civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.  *De La Fuente v. Interstate Commerce Commission*, 451 F.Supp. 867, 870 (N.D. Ill. June 5, 1978).  These venue alternatives deliberately place venue in those judicial districts which ordinarily would be most convenient to the defendants.  *Jones v. United States*, 407 F.Supp 873, 876 (N.D. Tex. 1976).  And unless a defendant has consented to be sued in a district in which venue is improper, he has a right to invoke the protection of the statute.  *De La Fuente*, 451 F.Supp. at 870.

Here, Plaintiff alleges that venue is proper simply because Defendant Pfister resides in the Northern District of Illinois.  However, Defendant Pfister is not properly joined in this lawsuit. Pontiac Correctional Center is the facility where Mr. Jenkins was incarcerated when the alleged constitutional violations occurred.  In addition, all of the Defendants, except for Defendant Pfister, continue to work at Pontiac.  All witnesses and all discovery depositions, except for those

pertaining to Defendant Pfister who should be dismissed from this case as stated above, will be conducted at Pontiac. Similar to the court in *Galindo*, this Court should grant transfer to the district where the inmate was incarcerated and where Plaintiff argues that the harm occurred as it is both convenient and serves the interests of justice. Thus, Defendants request that the Court transfer this matter to the Central District because "the transfer will serve the convenience of parties and witnesses and will serve the interests of justice." *Von Holdt* at 188.[4]

## III. Plaintiff Has Failed to Sufficiently State An Excessive Force Claim Against Defendants Boland, Deal, and Bufford.

In Eighth Amendment excessive force cases, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline. *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). This is known as the *Whitley* test. *Whitley v. Albers,* 475 U.S. 312, 319 (1986). "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Id.* Courts may consider several factors in determining whether a defendant used force in good faith "including the need for force, the amount of force used, the threat reasonably perceived by the officer, efforts made to temper the severity of the force, and the extent of the injury caused by the force." *Lewis v. Downey,* 581 F.3d 467, 477 (7th Cir. 2009).

In the instant case, Plaintiff alleges that Defendants Boland, Deal, and Bufford used unreasonable force against Mr. Jenkins which caused his death. (ECF No. 1 ¶ 26.) Further, Plaintiff alleges that Defendants Boland, Deal, and Bufford "intentionally used extreme or

---

[4] If this Court denies Defendants' motion to transfer venue, Defendants request that the Court sever the claims against Defendant Pfister as an alternative. *See* Fed. R. Civ. P. 21; *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); and *Harris v. Dart*, 2010 WL 5158134, *2 (N.D. Ill. Dec. 14, 2010).

excessive cruelty toward [Mr. Jenkins] for the very purpose of causing him harm, and not in a good faith effort to maintain or restore security or discipline." (ECF No. 1 ¶ 27.) However, Plaintiff's Complaint also alleges that the incident between Mr. Jenkins and either Defendant Deal or Bufford had to do with Plaintiff's possession of toilet paper while in the recreation yard and Plaintiff's failure to adhere to an order given by either Defendant Deal or Bufford (ECF No. 1 ¶¶ 16-17). These allegations provide support for Defendants use of force in good faith and based on the allegations which demonstrate a good faith need for force, Defendants request that this Court dismiss the claim of excessive force against them. Moreover, Plaintiff's choice to serve multiple persons with the same last name, and omit from the pleading the first name of these Defendants, underscores the inadequacy of the pleading.

## IV. Plaintiff Has Failed to Sufficiently State A Failure to Intervene Claim.

Plaintiff asserts in Count II that Defendants "had a reasonable opportunity to prevent the violation of Mr. Jenkins's constitutional rights..." and that Defendants "knew of a substantial risk of harm to Mr. Jenkins's safety, but consciously disregarded that risk by failing to take reasonable steps to prevent the harm from occurring." (ECF No. 1 ¶ 31-32.) Plaintiff also alleges that prior to October 2015, Defendants "had notice that correctional staff at Pontiac were routinely using excessive force against prisoners housed there." (ECF No. 1 ¶ 37.) However, Plaintiff's Count II fails to adequately connect Defendants to specific acts which allegedly violated Plaintiff's rights or specific instances of actual knowledge such that the Defendants would be properly charged with a duty to intervene. These allegations impermissibly lump the conduct of all Defendants together in an attempt to create liability for all when the Plaintiff can establish factually liability for none. An individual cannot be held liable under 42 U.S.C. § 1983 unless he or she is personally responsible for an alleged constitutional deprivation. *Duncan*, 644 F.2d at 655. A complaint must

sufficiently allege the defendant's personal involvement in order to state a constitutional claim. *Crowder*, 687 F.2d at 1005. Plaintiff's failure to intervene claim is based on general conclusions and provides no specific facts that show how Defendants personally could have prevented the alleged constitutional violations. Therefore, Count III of Plaintiff's Complaint should be dismissed.

**V.     Plaintiff Has Failed to Sufficiently State A Conspiracy Claim.**

In the Complaint, Plaintiff asserts that Defendants reached an agreement to deprive Mr. Jenkins of his constitutional rights, and each of the co-conspirators committed overt acts and were otherwise willful participants in joint activities. (ECF No. 1 ¶¶ 41-46.) However, Plaintiff does not allege any facts from which one could reasonably infer that Defendants entered into an agreement with any of the other Defendants for the accomplishment of some illegal end. *See Scherer*, 840 F.2d at 442. Plaintiff has failed to plead the minimal components of the conspiracy against Defendants since there are no allegation as to when the conspiracy was formed, nor are there any allegations as to the purpose of the conspiracy. Therefore, there is no support in the Complaint for these threadbare allegations of a conspiracy, and the claim of conspiracy in Count III should be dismissed. *See Ryan*, 188 F.3d at 860. Plaintiff's Complaint neither states a claim for conspiracy that is plausible on its face, nor gives Defendants notice of the grounds for relief. Thus, Plaintiff's conspiracy claim against Defendants should be dismissed.

**VI.    All State Law Claims Against All Defendants Should Be Dismissed As They are Barred by the Doctrine of Sovereign Immunity.**

Count IV (intentional infliction of emotional distress), Count V (battery), Count VI (negligent or willful and wanton conduct), Count VII (battery-wrongful death), and Count VIII

(negligent or willful and wanton conduct – wrongful death) are Illinois state law claims that are barred by the doctrine of sovereign immunity.[5]

The Illinois State Lawsuit Immunity Act, 745 ILCS 5/1, provides that the State of Illinois is immune from suit in any court except as provided in the Court of Claims Act (705 ILCS 505/8). Consequently, sovereign immunity deprives federal courts of subject matter jurisdiction over state law claims. *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001). To determine whether or not a claim is barred by sovereign immunity, the Court must analyze the issues involved and the relief sought in order to determine whether an action is in fact a suit against the State. *Currie v. Lao*, 148 Ill. 2d 151, 158 (Ill. 1992). An action brought against a State employee in an individual capacity will be considered a claim against the State when: (1) there are no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally, independent of the state employment; and (3) the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State. *Healy v. Vaupel*, 133 Ill. 2d 295, 209, 549 N.E.2d 1240, 1247 (1990).

First, Plaintiff does not allege that Defendants acted outside the scope of their authority. In fact, the Complaint alleges that Defendants were acting within the scope of their employment, while on duty, and in the employ of the Department of Corrections. (ECF No. 1 ¶¶ 6-10.) In other words, (1) the acts complained of in this case were within the scope of their authority, (2) the duty allegedly violated was not owed to the public generally independent of the fact of their state employment, and (3) the acts involved matters ordinarily within their normal and official functions. *Richman*, 270 F.3d at 441. As a result, even though these are individual capacity claims for

---

[5] Even if the Court finds that sovereign immunity does not apply to the state law claims, Defendants request that the Court decline to exercise supplemental jurisdiction.

2228dbbedaf753ad

damages, sovereign immunity is a jurisdictional bar. *See Richman,* 270 F.3d at 442 ("[I]f there are no allegations that the defendant was acting for a purpose unrelated to his employment, the fact that the conduct was willful and wanton does not take the conduct outside the defendant's scope of agency for purposes of sovereign immunity"). Additionally, whatever duty Defendants had to Plaintiff arises solely by virtue of their state employment; there is no general duty imposed upon a member of the public to prevent harm to another person. Finally, the claim against Defendants involves matters within their normal and official functions in a correctional facility. Plaintiffs have failed to identify how any of the actions or inactions of the Defendants falls outside of their roles as employees of the IDOC.

For these reasons, Counts IV, V, VI, VII, and VIII, being state law claims pleaded against the State, should be dismissed.

## V.      CONCLUSION

For the above and foregoing reasons, Defendants respectfully request that this Court grant their Motion to Dismiss for all Defendants. Further, Defendants request that this Court grant their Motion to Transfer Venue and transfer this case to the Central District of Illinois.

DATE: January 6, 2017

Respectfully submitted,

/s/ *Deborah J. Baker*

LISA MADIGAN
Attorney General of Illinois

Deborah J. Baker
Assistant Attorney General
Jessica M. Scheller
Unit Supervisor
General Law Bureau
100 W. Randolph, 13th Floor

*Attorneys for Defendants*

Chicago, Illinois 60601
(312) 814-2035
(312) 814-2098
dbaker@atg.state.il.us
jscheller@atg.state.il.us

14

## <u>CERTIFICATE OF SERVICE</u>

 The undersigned certifies that on January 6, 2017, she electronically filed the foregoing motion with the Clerk of the Court for the Northern District of Illinois by using the CM/ECF system. All participants in the case are registered CM/ECF users who will be served by the CM/ECF system.

       */s/ Deborah J. Baker*