# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PHYLLIS ELLIS, as Administrator of the Estate of Terrance Jenkins, <br><br> Plaintiff, <br><br> v. <br><br> RANDY PFISTER, et al., <br><br> Defendants. | Case No. 16 C 9449 |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On October 3, 2016, Plaintiff Phyllis Ellis, as Administrator of the Estate of decedent Terrance Jenkins ("Jenkins"), brought the present eight-count Complaint against Defendants Randy Pfister, James Boland, Adam Deal, Christopher Bufford, and Marvin Reed alleging violations of Jenkins' constitutional rights, along with supplemental state law claims. *See* 28 U.S.C. §§ 1331, 1367(a). Before the Court is Defendants' motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), as well as Defendants' motion to transfer venue under Rule 12(b)(3), or in the alternative, 28 U.S.C. § 1404. For the following reasons, the Court denies Defendants' Rule 12(b)(6) motion to dismiss. The Court will address Defendants' motion to transfer venue in a separate order.

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014); *see also Hill v. Serv. Emp. Int'l Union,* 850 F.3d 861, 863 (7th Cir. 2017). Pursuant to Rule 8(a)(2), a

complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the federal pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). When determining the sufficiency of a complaint under the plausibility standard, courts must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). Further, a plaintiff need not anticipate and attempt to allege around affirmative defenses in his complaint. *See Hyson USA, Inc. v. Hyson 2U, Ltd.,* 821 F.3d 935, 939 (7th Cir. 2016). Further, a plaintiff need not anticipate and attempt to allege around affirmative defenses in his complaint. *See Hyson USA, Inc. v. Hyson 2U, Ltd.,* 821 F.3d 935, 939 (7th Cir. 2016).

## BACKGROUND

In Plaintiff's Complaint, she alleges that during the relevant time period, Jenkins was a 56-year-old prisoner incarcerated at Illinois' Pontiac Correctional Center ("Pontiac") and that she is the Administrator of Jenkins' Estate. (R. 1, Compl. ¶ 5.) The Illinois Department of Corrections ("IDOC") employed Defendant Boland as a Pontiac correctional lieutenant and Defendants Deal and Bufford as Pontiac correctional officers. (*Id*. ¶¶ 6-8.) Defendant Pfister was Pontiacs' Warden during the relevant time period and Defendant Reed was the Assistant Warden of Operations. (*Id*. ¶¶ 9, 10.) As Pontiac's Warden, Pfister was responsible for the implementation, oversight, and supervision of policies and practices, and the oversight and

2

discipline of the Pontiac staff. (*Id*. ¶ 9.) In his role as Assistant Warden of Operations, Defendant Reed was also responsible for the oversight, implementation, and supervision of practices and policies at Pontiac, including oversight and discipline of Pontiac's staff. (*Id*. ¶ 10.)

Plaintiff further alleges that on October 4, 2015, Defendants Boland, Deal, and Bufford beat Jenkins while his arms and legs were restrained and suffocated him by shoving a piece of paper down his throat resulting in Jenkins' death. (*Id*. ¶ 1.) Plaintiff further contends that Jenkins' death was not the first incident of unjustified and unconstitutional violence by correctional officers at Pontiac nor was it the first incident of excessive force by Defendants Boland, Deal, and/or Bufford. (*Id*. ¶¶ 2, 21.) In other words, Plaintiff asserts that the unjustified attack of Jenkins is not an isolated incident, but that such unjustified use of force is a common occurrence at Pontiac. (*Id*. ¶ 24.) According to Plaintiff, despite their knowledge of this pattern of violence at Pontiac, Defendants Pfister and Reed failed to take any adequate actions to prevent these incidents of unjustified excessive force – like that used against Jenkins – from occurring. (*Id*. ¶¶ 2, 22, 23.)

In particular, Plaintiff asserts that in early October 2015, Jenkins was housed in the protective custody unit at Pontiac. (*Id*. ¶ 12.) Jenkins had glaucoma and was receiving ongoing medical treatment at Pontiac for it, and because of his glaucoma, Jenkins had excessive eye drainage. (*Id.* ¶ 14.) Plaintiff contends that on October 4, 2015, Jenkins left his housing unit to go to the outdoor recreation area for prisoners in protective custody and that Defendants Boland, Deal, and Bufford were monitoring prisoners in the area immediately inside of the yard. (*Id*. ¶ 15.) During a pat down of Jenkins, either Defendant Deal or Bufford noted that Jenkins had a small amount of toilet paper in his breast pocket and that the correctional officer told Jenkins that he was going to take his yard time away based on that officer's belief that Jenkins could not

3

bring the toilet paper with him into the yard.  (*Id*. ¶ 16.)  Jenkins explained to the officer that he needed the toilet paper because of his glaucoma and excessive eye drainage.  (*Id*.)  Defendant Deal or Bufford then cursed and yelled at Jenkins despite the fact that Jenkins was trying to explain why he needed the tissue paper for medical reasons.  (*Id*. ¶ 17.)  According to Plaintiff, Defendant Bolden then approached Jenkins and sprayed him with mace.  (*Id*. ¶ 18.)  Thereafter, Defendants Bolden, Bufford, and Deal attacked Jenkins dragging him away from the area.  (*Id*.)

Furthermore, Plaintiff alleges that Defendants Deal, Bufford, and Bolden then slammed Jenkins against the floor causing him to scream out in pain and restrained him with handcuffs and leg irons while leading him into a room out of the view of the other prisoners.  (*Id*.)  Despite the fact that he was totally immobilized, Defendants Deal, Boland, and Bufford proceeded to attack Jenkins, beating him about the face, head, neck, back, wrists, ankles, and knee, and then shoved a piece of paper down Jenkins' throat.  (*Id*. ¶ 19.)  Plaintiff further asserts that Defendant correctional officers then smothered Jenkins with their weight causing Jenkins' death.  (*Id*.)  The forensic pathologist who conducted Jenkins' autopsy concluded that he died as a result of "restraint asphyxia and airway occlusion by a foreign object."  (*Id*. ¶ 20.)  The autopsy further noted that the restraint asphyxia that caused Jenkins' death consisted of weight applied on Jenkins while in a prone position with "restricted movement of his arms and legs."  (*Id*.)

Based on this October 4, 2015 incident resulting in Jenkins' death, Plaintiff brings the following claims:  (1) an Eighth Amendment Excessive Force Claim (Count I); (2) a failure to intervene claim (Count II); (3) a constitutional conspiracy claim (Count III); (4) a state law intentional infliction of emotional distress claim (Count IV); (5) state law battery claims sounding in tort (Counts V, VII); and (6) state law negligent or willful and wanton conduct claims (Counts VI and VIII).

## ANALYSIS

I. **Constitutional Claims**

   A. **Eighth Amendment Excessive Force Claim – Count I**

In Count I of Plaintiff's Complaint, she alleges an Eighth Amendment excessive force claim against Defendants Boland, Deal and Bufford. "The use of force qualifies as excessive for the purpose of Eighth Amendment and due process jurisprudence when it entails the 'unnecessary and wanton infliction of pain.'" *Rice ex rel. Rice v. Corr. Med. Servs.,* 675 F.3d 650, 667 (7th Cir. 2012) (quoting *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986)). Although force used in "'a good-faith effort to maintain or restore discipline,' does not rise to the level of being unnecessary and wanton[,]" use of "force intended 'maliciously and sadistically' to cause harm to the prisoner falls under that standard." *Forrest v. Prine,* 620 F.3d 739, 744 (7th Cir. 2010) (quoting *Hudson v. McMillian,* 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)).

Viewing Plaintiff's well-pleaded allegations as true and construing all reasonable inferences in her favor – as the Court is required to do at this procedural posture – Plaintiff contends that Defendants correctional officers Boland, Deal, and Bufford slammed Jenkins against the floor, restrained him with handcuffs and leg irons, led him into a room out of the view of the other prisoners, and then beat Jenkins about the face, head, neck, back, wrists, ankles, and knee – despite Jenkins being immobilized. Defendants proceeded to shove a piece of paper down Jenkins' throat and smothered him with their weight. As a result, Jenkins died of "restraint asphyxia and airway occlusion by a foreign object." Under these facts, there is no indication from Plaintiff's allegations that Defendant correctional officers' use of force was made in good faith to maintain or restore discipline. *See Whitley*, 475 U.S. at 320; *Hudson,* 503

U.S. at 6-7.  Instead, as Plaintiff alleges, Defendants Deal, Bufford, and Boland intentionally used extreme or excessive cruelty toward Jenkins for the purpose of causing him harm.  (Compl. ¶ 27.)  Construing these allegations in Plaintiff's favor, Defendants had no justification for their conduct resulting in Jenkins' death.  Under these circumstances, Plaintiff has plausibly alleged a claim for excessive force under the Eighth Amendment.  *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  The Court denies Defendants' motion to dismiss Count I of the Complaint.

### B. Failure to Intervene Claim – Count II

In Count II, Plaintiff brings a failure to intervene claim against all Defendants based on the correctional officers' use of excessive force as alleged in Count I.  As discussed, viewed in her favor, Plaintiff contends that Defendants Boland, Deal, and Bufford intentionally attacked Jenkins and were present while the other correctional officers attacked and beat Jenkins resulting in his death.  Plaintiff also maintains that Defendants Deal, Boland, and Bufford knew of a substantial risk of harm to Jenkins' safety, but did not take reasonable steps to prevent the harm from occurring.  These allegations sufficiently state that Defendants Deal, Boland, and Bufford had a realistic opportunity to step forward and prevent each other from attacking Jenkins' resulting in the alleged violation of Jenkins' Eighth Amendment rights, yet failed to do so.  *See Lewis v. Downey,* 581 F.3d 467, 472 (7th Cir. 2009); *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005); *Smith v. Burge,* ___ F.Supp.3d ___, 2016 WL 6948387, at *10 (N.D. Ill. Nov. 28, 2016).  Indeed, despite Defendants' arguments to the contrary, "[u]nder Rule 8, a plaintiff only needs to 'give enough details about the subject-matter of the case to present a story that holds

6

together.'" *Presser v. Acacia Mental Health Clinic,* LLC, 836 F.3d 770, 776 (7th Cir. 2016) (citation omitted). Plaintiff has fulfilled this requirement.

Plaintiff further alleges that Defendants Pfister and Reed are liable for failing to intervene because they were the correctional officers' supervisors and policy-makers at the prison. *See Matthews v. City of E. St. Louis,* 675 F.3d 703, 708 (7th Cir. 2012) ("To show personal involvement, the supervisor must 'know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.'") (citation omitted). More specifically, Plaintiff argues that Defendants Pfister and Reed knew of the pattern and widespread culture of using excessive force at Pontiac and failed to intervene and that "[i]n the case of those responsible for setting policy, liability will result from the institution of a policy that, when enforced, causes a constitutional deprivation." *Childress v. Walker,* 787 F.3d 433, 440 (7th Cir. 2015) (internal quotation marks omitted). Defendants, on the other hand, argue that Defendants Pfister and Reed did not have a realistic opportunity to intervene because they were not present when Defendants Deal, Boland, and Bufford allegedly attacked Jenkins resulting in his death by asphyxiation.

Here, Plaintiff alleges that prior to Jenkins' death, there was a pervasive practice of using excessive force and brutality against inmates at Pontiac and that Defendants Pfister and Reed were aware of this practice and the widespread culture of unjustified violence against inmates, yet failed to take adequate action to prevent these well-known incidents of excessive force. (Compl. ¶¶ 2, 21, 24.) In addition, Plaintiff asserts that despite this knowledge, Defendants Reed and Pfister failed to adequately supervise, train, discipline, or take any other reasonable measures to prevent Defendants Boland, Deal, Bufford, and other correctional officers from using unnecessary excessive force. (*Id*. ¶¶ 24, 36, 37.) Based on these allegations, the Court can

7

reasonably infer that Defendants Reed and Pfister failed to intervene despite their knowledge of the widespread culture of unjustified violence at Pontiac – even though they were not in the immediate vicinity of the October 4, 2015 attack resulting in Jenkins' death. *See Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (supervisor "does not have to have participated directly in the deprivation" to be personally involved); *see, e.g., Smith v. Burge,* 2016 WL 6948387, at *10; *Kitchen v. Burge,* 781 F. Supp. 2d 721, 736 (N.D. Ill. 2011). Accordingly, Plaintiff has stated a plausible claim for relief against Defendants Pfister and Reed for their failure to intervene. *See Iqbal,* 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). The Court denies Defendants' Rule 12(b)(6) motion to dismiss Count II.

### C. Conspiracy Claim – Count III

Next, in Count III of the Complaint, Plaintiff brings a constitutional conspiracy claim against all Defendants based on the Eighth Amendment excessive force violation alleged in Count I. The elements of a § 1983 conspiracy claim include that (1) the individuals reached an agreement to deprive a plaintiff of his constitutional rights; and (2) overt acts in furtherance of the agreement actually deprived the plaintiff of those constitutional rights. *See Beaman v. Freesmeyer,* 776 F.3d 500, 510 (7th Cir. 2015). "The participants in the conspiracy must share the general conspiratorial objective, but they need not know all the details of the plan designed to achieve the objective or possess the same motives for desiring the intended conspiratorial result." *Cooney v. Casady,* 735 F.3d 514, 518 (7th Cir. 2013) (citation omitted).

In her Complaint, Plaintiff has alleged adequate facts raising a reasonable inference that Defendants conspired to deprive Jenkins of his constitutional rights. *See Geinosky v. City of*

8

*Chicago,* 675 F.3d 743, 749 (7th Cir. 2012) ("Under *Twombly*, all plaintiff needed to allege was a plausible account of a conspiracy."). Specifically, Plaintiff alleges that Defendants Boland, Bufford, and Deal reached an agreement on October 4, 2015 to deprive Jenkins of his constitutional rights and participated in this conspiracy until Jenkins' death. She further contends that there was a conspiracy among all Defendants because there is a widespread culture of unjustified violence against inmates at Pontiac of which all Defendants were aware, and that Defendant Deal, Bufford, and Boland had a history of using unnecessary excessive force on previous occasions. To support her allegations of this "history," Plaintiff asserts that approximately one week prior to the October 4, 2015 incident resulting in Jenkins' death, Defendants Bolden, Deal, and Bufford attacked another inmate at Pontiac. (Compl. ¶ 21.) Also, Plaintiff maintains that Defendants reached an agreement among themselves to deprive Jenkins of his constitutional rights and to protect each other from liability, and that in furtherance of the conspiracy, each Defendant committed overt acts illustrating willful participation in this joint activity. (*Id.* ¶¶ 42, 43.) Plaintiff further alleges that Defendants Reed and Pfister knew of the unjustified use of excessive force, but failed to do anything to prevent the repeated abuse or discipline the officers who abused inmates. These allegations raise a reasonable and plausible inference that Defendants conspired to deprive Jenkins' of his constitutional rights. *See, e.g., Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 790 (N.D. Ill. 2013) (general and specific allegations sufficient to withstand motion to dismiss); *see also Bell v. City of Milwaukee,* 746 F.2d 1205, 1255 (7th Cir. 1984) ("Rarely in a conspiracy case will there be direct evidence of an express agreement among all the conspirators to conspire"). Because Plaintiff has sufficiently alleged her constitutional conspiracy claim under the dictates of *Iqbal* and *Twombly*, the Court denies Defendants' motion to dismiss Count III of the Complaint.

9

**II.    State Law Claims**

Last, Plaintiff alleges state law claims of intentional infliction of emotional distress, battery, and negligent or willful and wanton conduct.  In their motion to dismiss, Defendants bring the  affirmative defense that they are protected by sovereign immunity as State of Illinois officials.  *See* 745 ILCS 5/1.  More specifically, Defendants argue that they were acting within the scope of their employment and did not violate any statutory or constitutional law in relation to the October 4, 2015 incident.  In support of this argument, Defendants contend that Defendants Bufford, Deal, and Boland were faced with a difficult and dangerous task of responding to an inmate who would not comply with their instructions and orders, and that Plaintiff has failed to sufficiently allege constitutional liability as to Defendants Pfister and Reed.  As discussed above, however, Plaintiff has adequately alleged constitutional deprivations against all Defendants under *Iqbal* and *Twombly*.

In any event, if a plaintiff alleges that state official or employees violated constitutional or state law – as is the case here – Illinois' sovereign immunity statute does not afford state officials protection.  *See Murphy v. Smith,* 844 F.3d 653, 658-59 (7th Cir. 2016); *see also Healy v. Vaupel,* 133 Ill. 2d 295, 308, 140 Ill.Dec. 368, 549 N.E.2d 1240 (Ill. 1990) ("Sovereign immunity affords no protection, however, when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority").  As the Supreme Court of Illinois teaches:

> This exception is premised on the principle that while legal official acts of state officers are regarded as acts of the State itself, illegal acts performed by the officers are not.  In effect, actions of a state officer undertaken without legal authority strip the officer of his official status.  Accordingly, when a state officer performs illegally or purports to act under an unconstitutional act or under authority which he does not have, the officer's conduct is not regarded as the conduct of the State.

*Leetaru v. Bd. of Trs. of Univ. of Ill.,* 32 N.E.3d 583, 596 (Ill. 2015). Because Plaintiff has plausibly alleged constitutional violations against all Defendants, Defendants are not protected by Illinois' sovereign immunity principles. *See, e.g., Ollie v. Davis,* No. 14 CV 608 , 2017 WL 1035748, at *3 (S.D. Ill. Mar. 17, 2017) (defendant correctional officer's "alleged actions of retaliation and issuing false disciplinary tickets, if proven true, are not a part of his duties and would be a violation of constitutional law," thus, defendant is "not entitled to sovereign immunity in this case."). The Court therefore denies this aspect of Defendants' motion to dismiss.

On a final note, the Court reminds the parties that arguments made for the first time in reply briefs are waived, *see Wedemeyer v. CSX Transp., Inc.,* 850 F.3d 889, 897 (7th Cir. 2017), as well as perfunctory arguments made in footnotes. *See Evergreen Square of Cudahy v. Wisconsin Hous. & Econ. Dev. Auth.,* 848 F.3d 822, 829 (7th Cir. 2017).

## CONCLUSION

For these reasons, the Court denies Defendants' motion to dismiss brought pursuant to Rule 12(b)(6).

**Dated:** April 24, 2017

                                                        ENTERED

                                                        **AMY J. ST. EVE**
                                                        **United States District Court Judge**