IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PHYLLIS ELLIS, as Administrator of the Estate of Terrance Jenkins, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 16 C 9449 |
| v. | ) ) | Judge Amy J. St. Eve |
| RANDY PFISTER, et al., | ) ) | |
| Defendants. | ) | |

## ORDER

The Court, in its discretion, grants Defendants' motion to transfer venue brought pursuant to 28 U.S.C. § 1404(a). [30]. The Clerk of Court is directed to transfer this case to the United States District Court for the Central District of Illinois forthwith. Status hearing set for 6/20/17 is stricken.

## STATEMENT

On October 3, 2016, Plaintiff Phyllis Ellis, as Administrator of the Estate of decedent Terrance Jenkins ("Jenkins"), brought an eight-count Complaint against Defendants Randy Pfister, James Boland, Adam Deal, Christopher Bufford, and Marvin Reed alleging violations of Jenkins' constitutional rights, along with supplemental state law claims. *See* 28 U.S.C. §§ 1331, 1367(a). Before the Court is Defendants' motion to transfer venue to the Central District of Illinois under Federal Rule of Civil Procedure 12(b)(3), or in the alternative, 28 U.S.C. § 1404(a). For the following reasons, the Court, in its discretion, grants Defendants' motion to transfer under § 1404(a).[1]

## BACKGROUND

In Plaintiff's Complaint, she alleges that during the relevant time period, Jenkins was a 56-year-old prisoner incarcerated at Illinois' Pontiac Correctional Center ("Pontiac") and that she is the Administrator of Jenkins' Estate. (R. 1, Compl. ¶ 5.) The Illinois Department of Corrections ("IDOC") employed Defendant Boland as a Pontiac correctional lieutenant and Defendants Deal and Bufford as Pontiac correctional officers. (*Id*. ¶¶ 6-8.) Defendant Pfister was Pontiacs' Warden during the relevant time period and Defendant Reed was the Assistant Warden of Operations. (*Id*. ¶¶ 9, 10.) As Pontiac's Warden, Pfister was responsible for the implementation, oversight, and supervision of policies and practices, and the oversight and discipline of the Pontiac staff. (*Id*. ¶ 9.) In his role as Assistant Warden of Operations,

---
[1] The Court denied Defendants' Rule 12(b)(6) motion to dismiss on April 24, 2017. The Court presumes familiarity with that ruling.

Defendant Reed was also responsible for the oversight, implementation, and supervision of practices and policies at Pontiac, including oversight and discipline of Pontiac's staff. (*Id.* ¶ 10.)

Plaintiff further alleges that on October 4, 2015, Defendants Boland, Deal, and Bufford beat Jenkins while his arms and legs were restrained and suffocated him by shoving a piece of paper down his throat resulting in Jenkins' death. (*Id.* ¶ 1.) Plaintiff contends that Jenkins' death was not the first incident of unjustified and unconstitutional violence by correctional officers at Pontiac nor was it the first incident of excessive force by Defendants Boland, Deal, and/or Bufford. (*Id.* ¶¶ 2, 21.) Put differently, Plaintiff asserts that the unjustified attack of Jenkins is not an isolated incident, but that such unjustified use of force is a common occurrence at Pontiac. (*Id.* ¶ 24.) According to Plaintiff, despite their knowledge of this pattern of violence at Pontiac, Defendants Pfister and Reed failed to take any adequate actions to prevent these incidents of unjustified excessive force – like that used against Jenkins – from occurring. (*Id.* ¶¶ 2, 22, 23.)

In particular, Plaintiff asserts that in early October 2015, Jenkins was housed in the protective custody unit at Pontiac. (*Id.* ¶ 12.) Jenkins had glaucoma and was receiving ongoing medical treatment at Pontiac for it, and because of his glaucoma, Jenkins had excessive eye drainage. (*Id.* ¶ 14.) Plaintiff alleges that on October 4, 2015, Jenkins left his housing unit to go to the outdoor recreation area for prisoners in protective custody and that Defendants Boland, Deal, and Bufford were monitoring prisoners in the area immediately inside of the yard. (*Id.* ¶ 15.) During a pat down of Jenkins, either Defendant Deal or Bufford noted that Jenkins had a small amount of toilet paper in his breast pocket and that the correctional officer told Jenkins that he was going to take his yard time away based on that officer's belief that Jenkins could not bring the toilet paper with him into the yard. (*Id.* ¶ 16.) Jenkins explained to the officer that he needed the toilet paper because of his glaucoma and excessive eye drainage. (*Id.*) Defendant Deal or Bufford then cursed and yelled at Jenkins despite the fact that Jenkins was trying to explain why he needed the tissue paper for medical reasons. (*Id.* ¶ 17.) According to Plaintiff, Defendant Bolden then approached Jenkins and sprayed him with mace. (*Id.* ¶ 18.) Thereafter, Defendants Bolden, Bufford, and Deal attacked Jenkins dragging him away from the area. (*Id.*)

Furthermore, Plaintiff alleges that Defendants Deal, Bufford, and Bolden then slammed Jenkins against the floor causing him to scream out in pain and restrained him with handcuffs and leg irons while leading him into a room out of the view of the other prisoners. (*Id.*) Despite the fact that he was totally immobilized, Defendants Deal, Boland, and Bufford proceeded to attack Jenkins, beating him about the face, head, neck, back, wrists, ankles, and knee, and then shoved a piece of paper down Jenkins' throat. (*Id.* ¶ 19.) Plaintiff further asserts that Defendant correctional officers then smothered Jenkins with their weight causing Jenkins' death. (*Id.*) The forensic pathologist who conducted Jenkins' autopsy concluded that he died as a result of "restraint asphyxia and airway occlusion by a foreign object." (*Id.* ¶ 20.) The autopsy further noted that the restraint asphyxia that caused Jenkins' death consisted of weight applied on Jenkins while in a prone position with "restricted movement of his arms and legs." (*Id.*)

Based on this October 4, 2015 incident resulting in Jenkins' death, Plaintiff brings the following claims: (1) an Eighth Amendment Excessive Force Claim (Count I); (2) a failure to intervene claim (Count II); (3) a constitutional conspiracy claim (Count III); (4) a state law

2

intentional infliction of emotional distress claim (Count IV); (5) state law battery claims sounding in tort (Counts V, VII); and (6) state law negligent or willful and wanton conduct claims (Counts VI and VIII).

## LEGAL STANDARD

"In 1948, Congress enacted the federal change of venue statute, codified at 28 U.S.C. § 1404, to allow a district court to transfer an action filed in a proper, though not necessarily convenient, venue to a more convenient district." *Research Automation, Inc. v. Schrader-Bridgeport Int'l Inc.*, 626 F.3d 973, 977 (7th Cir. 2010). Specifically, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Under § 1404(a), the moving party bears the burden of establishing that (1) venue is proper in the transferor district, (2) venue and jurisdiction would be proper in the transferee district, and (3) the transfer will serve the convenience of the parties and witnesses and is in the interest of justice. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Id.* at 219. Moreover, § 1404 "permits a 'flexible and individualized analysis' and affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations." *Research Automation*, 626 F.3d at 978.

## ANALYSIS

Because Defendant Randy Pfister resides in the Northern District of Illinois, venue is proper in this district under 28 U.S.C. § 1391(b)(1). *See KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 724 (7th Cir. 2013) ("venue is proper …in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located.") (quoting 28 U.S.C. § 1391(b)(1)). The Court therefore turns to Defendants' motion to transfer venue under 28 U.S.C. § 1404(a) – recognizing that the parties do not dispute that venue and jurisdiction are proper in the Central District of Illinois. As such, the Court examines whether transfer will serve the convenience of the parties and witnesses and is in the interest of justice.

### A.    Convenience of the Parties and Witnesses

To evaluate the convenience of one venue over another, the Court considers four factors: (1) Plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; and (4) the convenience of the parties and witnesses. *See Research Automation,* 626 F.3d at 978; *Rosen v. Spirit Airlines, Inc.*, 152 F. Supp. 3d 1055, 1059 (N.D. Ill. 2015). As discussed below, Defendants have met their burden of establishing that the Central District of Illinois is more convenient under these factors. *See Coffey,* 796 F.2d at 219-20; *Body Sci. LLC v. Boston Sci. Corp.*, 846 F. Supp. 2d 980, 991 (N.D. Ill. 2012).

First, a plaintiff's choice of forum is given substantial weight unless another forum has a stronger relationship to the dispute. *In re Nat'l Presto Indus., Inc.,* 347 F.3d 662, 663-64 (7th Cir. 2003). Here, although Plaintiff and Jenkins' son live in Chicago and Plaintiff's choice of forum is the Northern District of Illinois, the Central District of Illinois has a stronger connection

to this dispute because it is the situs of the material events that took place on October 4, 2015 at the Pontiac Correctional Center. *See Rosen,* 152 F. Supp. 3d at 1060. Put differently, the majority – if not all – of the operative facts took place at Pontiac. *See Body Sci.*, 846 F. Supp. 2d at 993. Plaintiff's only other connection to the Northern District of Illinois is through her counsel, which are located in Chicago, but "[i]t is well-settled, however, that consideration of the convenience of Plaintiff's counsel is not an appropriate factor to consider when evaluating transfer." *Id.*

Second, the relative ease of access to sources of proof weighs in favor of transferring this lawsuit to the Central District of Illinois for similar reasons. Because the incident underlying Jenkins' death occurred at Pontiac, the location of the physical evidence points to transferring this lawsuit to the Central District. Also, as discussed immediately below, the majority of the non-party witnesses either work at Pontiac or are incarcerated there. In terms of electronic sources of proof, this factor is equipoise. *See Craik v. Boeing Co.*, 37 F. Supp. 3d 954, 961 (N.D. Ill. 2013).

Last, as to the convenience of the parties and witnesses, Plaintiff asserts that two of the named Defendants live closer to the federal courthouse in Chicago than the federal courthouse in Peoria and that IDOC may transfer prisoner witnesses from Pontiac to other prisons throughout Illinois. That being said, in their Rule 26(a)(1) initial disclosures, Plaintiff listed eight non-party witnesses who work at Pontiac and Defendants listed approximately eighteen non-party witnesses who work there, and it is well-established that the convenience of non-party witnesses are given more consideration than party-witnesses. *See Rosen*, 152 F.Supp.3d at 1061. This factor weighs in favor of transfer to the Central District of Illinois.

**B.     Interest of Justice**

The decision to transfer venue also relies upon the Court's consideration of the interest of justice, which "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Coffey,* 796 F.2d at 220. When considering the interests of justice, the Court looks to certain public interest factors, including: "(i) the congestions of the respective court dockets; (ii) prospects for a speedy trial; (iii) the respective desirability of resolving controversies in each locale; (iv) the court's familiarity with the applicable law; and (v) the relationship of each community to the controversy." *Taylor v. Midland Funding, LLC*, 94 F. Supp. 3d 941, 945 (N.D. Ill. 2015). "The 'interest of justice' analysis relates [ ] to the efficient functioning of the courts, not to the merits of the underlying dispute." *Coffey*, 796 F.2d at 221.

Looking to the congestion of the respective court dockets and prospects for a speedy trial, according to the most current federal court management statistics, the median time from filing to dispositive resolution in civil matters in the Northern District of Illinois is 7.4 months, whereas, in the Central District of Illinois it is 10.7 months. Nonetheless, the median time from filing to trial in civil cases in the Northern District is 40.4 months and in the Central District it is 38.1. [2] This factor is thus neutral because the difference is negligible. *See, e.g., Harper v. Illinois Dep't of Corr.*, No. 16-CV-2171, 2016 WL 3014835, at *3 (N.D. Ill. May 26, 2016).

---

[2]  http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2016/12/31-1

Next, the desirability of resolving this lawsuit in each locale tips in favor of the Central District of Illinois because all of the conduct underlying this lawsuit occurred at Pontiac Correctional Center. *See Doage v. Bd. of Regents,* 950 F.Supp. 258, 262 (N.D. Ill. 1997) ("Resolving litigated controversies in their locale is a desirable goal of the federal courts."). Likewise, the Central District of Illinois has a strong relationship to the controversy that took place at one of the state's correctional facilities located there. Finally, district court judges in both the Northern and Central Districts of Illinois are abundantly familiar with prison litigation, which involves both constitutional and Illinois common law claims, therefore, both courts' familiarity with the applicable law is a neutral.

Setting aside the neutral factors, the convenience of the parties and witnesses and the interests of justice factors strongly weigh in favor of transfer. Accordingly, the Court grants Defendants' motion to transfer venue and transfers this lawsuit to the United States District Court for the Central District of Illinois.

**ENTERED:** June 5, 2017

_____
**AMY J. ST. EVE**
**United States District Court Judge**